## Hirsch v. City of Philadelphia

*David Kanner*, for plaintiffs.

*Daniel I. Murphy*, Assistant City Solicitor, and *David Berger*, City Solicitor, for defendant.

SPORKIN, J., September 12, 1958.—This case comes before us on plaintiffs' petition, pursuant to Pennsylvania Rule of Civil Procedure 4019, for an order to compel one of defendants, the City of Philadelphia, to furnish information to plaintiffs.

The subject suit in trespass arose from a right-angle collision in which were involved a city-owned Water Department truck allegedly driven by Joel Brown, the other defendant,* and a passenger car owned by plaintiff, Sam Hirsch, and driven by plaintiff, Joseph Hirsch. Plaintiffs' claims are for property damage and for personal injuries respectively.

Plaintiffs have filed a petition to compel the city to divulge the existence and contents of a statement allegedly obtained from defendant, Brown, by the Accident Investigation Division of the Philadelphia Police Department, referred to as AID. In the taking of oral depositions by plaintiffs, the investigating police officer, upon instructions from the assistant city solicitor, refused to answer questions relating to whether a statement was obtained by the police from defendant,

---

* Joel Brown met his death in an automobile accident in New Jersey approximately two months after the accident in question.

Brown, or to disclose the contents of any statement so taken.

In its answer to plaintiffs' petition, the city bases its refusal to disclose the information requested on two grounds: First, the city is exempt from the disclosure requirement by reason of section 5-1104 of the City Charter of 1951, which reads as follows:

"Public Right to Inspection. City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger the public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is legally privileged, or which have been *prepared for or by the Law Department for use in actions* or proceedings to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection but the officer, department, board or commission or other governmental agency of the City having the care and custody of such records may make reasonable regulations governing the time, place and manner of their inspection and for the purposes of archival preservation, copies of City records may be substituted in lieu of original records." (Italics supplied.)

This section of the city charter relates to the public right to inspection and in our view has no application to the case at bar. It will be observed from our discussion, infra, that there may be some doubt as to whether AID reports are "prepared for . . . the Law Department for use in actions . . . to which the City may be a party," but we are not here concerned with whether police reports must be made available for public inspection. We are merely deciding whether the document in issue is one of a kind which, under the Rules of Civil Procedure, a party is obliged to disclose to an adversary.

The city's other ground for refusing to furnish the information sought by plaintiffs is that the AID report was made "in anticipation of litigation or in preparation for trial" within the intendment of Pa. R. C. P. 4011(d). The Accident Investigation Division of the Police Department is charged with the duty of investigating all accidents involving motor vehicles in the City of Philadelphia. It is also an investigating arm of the Law Department of the City of Philadelphia and is specifically charged, by instruction no. 6 of the Office of Managing Director dated July 16, 1951, "to investigate all accidents involving City-owned vehicles". In practice, AID reports, with the exception of those concerning accidents in which city vehicles are involved, are made available for public inspection. AID investigation reports involving city-owned vehicles are, unlike other AID reports, not forwarded to the Department of Records. Reports concerning city-owned vehicles are forwarded to the Claims Division of the Law Department and copies thereof to the particular department whose vehicle is involved in the accident, and to the Department of Public Property.

It is doubtful that the framers of the procedural rules were mindful of the specific type of problem which now confronts us. The city urges that an AID report, which by official direction is required to be forwarded to the city's Law Department for its use in connection with litigation arising from accidents involving city-owned vehicles, is a report prepared "in anticipation of litigation." We must recognize, however, that these reports, which are prepared routinely by police investigators, serve a variety of purposes. We are asked to decide that potential employment of the AID reports by the city, in future litigation, stamps the reports with the character of being prepared "in anticipation of litigation." We are not so persuaded.

Our decision might be more difficult were it not for Pa. R. C. P. 126 which requires that the rules be "liberally construed." In accordance with this mandate of liberal construction, Pennsylvania courts have repeatedly held that reports prepared in the usual course of a party-litigant's business are not protected from discovery and inspection, even if such reports have an incidental use in litigation. The test applied by our courts is not whether the information obtained by a party *may* be used in subsequent litigation, nor whether the report was obtained by a party *after* the incident which gave rise to the litigation, but whether the information was obtained specifically for the purpose of preparing for litigation. Thus in Stebelski v. Philadelphia Transportation Co., 6 D. & C. 2d 627 (1956), the court held that routine inspection reports made by a traction company of its facilities were available to a plaintiff in a suit against the traction company. And in Bradley v. Philadelphia Transportation Company, 87 D. & C. 548 (1954), the court held that it would "allow" an interrogatory referring to reports made by the defendant's employes "with the limitation, however, that defendant is not required to disclose or produce any reports or memoranda secured for the first time *in anticipation of this litigation.*" (Italics supplied.)

In the Bradley case the court stressed the fact that the reports and data were prepared by defendant's employes "as part of their regular duties." To the same effect is Shohola Feed & Grain Co. v. Hayden, 5 D. & C. 2d 62 (1955), which expressly follows the Bradley case, and Moulton v. Philadelphia Suburban Transportation Co., 11 D. & C. 2d 56 (1957), in which the above quoted language of the Bradley case was restated.

In Abel v. Philadelphia Suburban Transportation Co., 9 D. & C. 2d 737 (1956), at page 739, the court

refused to compel disclosure of a report of an investigation made by the Upper Darby Township police because the investigation in the Abel case was not "the ordinary police investigation", the court saying:

"It is apparent that, in this case, the police went further than usual and the only proper inference which can be drawn is that a police officer had been injured and the police department was interested in protecting him and the taxpayers of the township. The natural conclusion from this is that the investigation was thus extended in contemplation of litigation and in preparation for trial."

There is nothing to indicate that the investigation in the instant case was anything other than a routine motor vehicle accident investigation. It has not been contended by the city that its police officers, in making routine AID investigations, make one type of investigation where city vehicles are involved and a different type of investigation where noncity vehicles are involved. We take judicial notice that the Police Department of the City of Philadelphia, as part of its regular and routine business, investigates *all* motor vehicle accidents for purposes of enforcing traffic laws, achieving greater community safety and accumulating statistical information. In those cases in which city vehicles are involved, the reports are obviously used also to determine the culpability of the city's employes and the character of the damage to its vehicles. Another city purpose which is served is that such AID reports are made available to the city's Law Department for use if litigation should arise out of accidents involving city vehicles. Under these circumstances, AID investigations of city vehicle accidents are so clearly a part of the city's *regular* business that the incidental use of the reports in litigation, as in the case before us, cannot impart to them the character of being made

"in anticipation of litigation or in preparation for trial."

For the foregoing reasons, the City of Philadelphia is directed to disclose to plaintiffs all reports and investigations made routinely by the AID, including photographs contained in such reports. It may exclude from disclosure only such reports as have been made in preparation for the specific litigation before us. Routine AID reports do not fall within this classification.

Accordingly, we enter the following

*Order*

And now, to wit, September 12, 1958, the City of Philadelphia is directed to disclose to plaintiffs all reports and investigations made routinely by the Accident Investigation Division of the Philadelphia Police Department, including photographs contained in such reports, if any. The City of Philadelphia may exclude from disclosure only such reports as have been made in preparation for the instant case. Routine Accident Investigation Division reports do not fall within this classification.